# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| **CALLIE BRYANT,** | } |
| **Plaintiff,** | } |
| v. | } Case No.: 5:09-CV-1860-RDP |
| **MICHAEL J. ASTRUE,** **COMMISSIONER OF** **SOCIAL SECURITY,** | } |
| **Defendant.** | } |

## MEMORANDUM OF DECISION

Plaintiff Callie Bryant brings this action pursuant to Section 205(g) of the Social Security Act (the "Act") seeking review of the decision by the Commissioner of the Social Security Administration ("Commissioner") denying her claim for Social Security Disability Insurance Benefits ("DIB"). *See* 42 U.S.C. § 405(g). Based upon the court's review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner is due to be affirmed.

### I. Proceedings Below

This action arises from Plaintiff's application for Title II Social Security DIB, dated December 7, 2006, alleging disability beginning on April 22, 2006. (Tr. 60). Plaintiff's application was denied by the Social Security Administration in its decision dated March 7, 2007. (Tr. 48). Plaintiff then requested a hearing before an administrative law judge ("ALJ"). (Tr. 53). The ALJ conducted the hearing in Huntsville, Alabama, on February 12, 2009, via video teleconference from his office in Florence, Alabama. (Tr. 10, 24, 54).

At the time of the hearing, Plaintiff was 43 years old and had completed a seventh-grade education. (Tr. 27, 107). Plaintiff had previously worked as a truck driver, a resident assistant, an assembly line operator building computers, a housewife, and as a sewing machine operator. (Tr. 91-98). Plaintiff alleges limitations based upon her neck surgery, right arm numbness, surgery performed on both hands, back pain, bipolar disorder, and manic depression. (Tr. 101). Plaintiff reports having previously undergone two cervical fusions at C5-C7 and has since been receiving conservative treatment at the Tennessee Valley Pain Consultants Center for Pain Management and the Occupational Health Group of Huntsville. (Tr. 167, 264). Records from those facilities show Plaintiff indicating lower neck pain "from the base of her skull down her entire spine," pain "on her entire right side from her head down to her toes," and "swelling of her hands and lower extremities." (Tr. 167). Plaintiff underwent surgery in July 2005 to remove cysts from both wrists. (Tr. 139).

Plaintiff also has a history of depression. On June 21, 2005, Plaintiff was admitted to Crestwood Medical Center for an attempted suicide. (Tr. 151). Records indicate that there had been three "suicide gestures" prior to the June 2005 incident. (Tr. 151). On September 2, 2005, during a clinic visit to the Huntsville Hospital Center for Pain Management, Plaintiff reported she had been diagnosed as bipolar by Dr. Aerify. (Tr. 176). Medical records also indicate a struggle with drug abuse. (Tr. 368, 371). Plaintiff was scheduled for a physical examination to measure disability on February 2, 2007. The examination was not completed because Plaintiff began shouting at her doctor and left the room slamming all the doors on her way out. (Tr. 224).

Plaintiff appeared in person at the hearing in Huntsville, Alabama along with counsel, and Patsy Bramlett, a vocational expert. (Tr. 26). In the ALJ's decision dated March 17, 2009, he determined that Plaintiff was capable of performing past relevant work as an electronics worker, and therefore, concluded that Plaintiff was not disabled within the meaning of the Act, and thus not eligible for Social Security DIB. (Tr. 16). On July 21, 2009, the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 2), making that decision the final decision of the Commissioner, and therefore, a proper subject of this court's review. 42 U.S.C. § 405(g).

## II. ALJ Decision

Disability under the Act is determined under a five-step test. 20 C.F.R. § 404.1 *et. seq*. First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(b). "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. § 404.1572(a). "Gainful work activity" is work that is done for pay or profit. 20 C.F.R. § 404.1572(b). If the ALJ finds that the claimant engages in substantial gainful activity, then the claimant cannot claim disability. Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities. Absent such impairment, the claimant may not claim disability. Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526). If such criteria are met, the claimant is declared disabled.

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis. The ALJ must first determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite her impairments. 20 C.F.R. § 404.1520(e). In the fourth step, the ALJ determines whether the claimant has the RFC to perform past relevant work. If the claimant is determined to be capable of performing past relevant work, then she is deemed not disabled. If the ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the fifth and final step. In the last part of the analysis, the ALJ must determine whether the claimant is able to perform any other work commensurate with his RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g). Here, the burden of proof shifts from the claimant to the ALJ to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1512(g), 404.1560(c).

In the instant case, the ALJ determined that: (1) Plaintiff did not engage in substantial gainful activity since the onset of the alleged disability; (2) Plaintiff does have medically determinable impairments—namely, degenerative disc disease with a history of a cervical fusion, a depressive disorder, hypertension, and obesity—that more than minimally affect her ability to perform work-related activities; but that (3) Plaintiff's medically determinable impairments do not meet or medically equal one of the listed impairments in 20 C.F.R. 404, Subpart P, Appendix 1. (Tr. 12). After consideration of the record, the ALJ found that Plaintiff retains the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b) with limitations. (Tr. 12-15). Based on the testimony of the vocational expert, the ALJ found that Plaintiff was

capable of performing past relevant work as an electronics worker, and thus concluded that Plaintiff is not disabled as defined by the Act, and therefore not entitled to a period of DIB. (Tr. 16).

### III. Plaintiff's Argument for Reversal

Plaintiff presents four arguments for reversing the decision of the ALJ. First, Plaintiff contends that the ALJ's RFC determination was improper since the assessment "does not include any restrictions regarding detailed versus simple work or the ability to maintain attention or concentration." (Pl.'s Mem. 1). Second, Plaintiff asserts that, in reaching his RFC determination, the ALJ "neglect[ed] to mention [Plaintiff's] history of psychiatric hospitalization for suicide attempts in July 1998 at Huntsville Hospital and June 2005 at Crestwood Medical Center." (Pl.'s Mem. 1). Such records, Plaintiff maintains, "were available at the time of the initial claim denial, but were apparently removed prior to the ALJ hearing, as is evident by the CD just following the initial denial when compared with the exhibit CD." (Pl.'s Mem. 1-2). Plaintiff's third argument is that the ALJ gave greater weight to the opinions of non-treating consultants over those of a treating physician without articulating good cause for doing so. (Pl.'s Mem. 2). Finally, Plaintiff alleges that the ALJ misapplied the pain standard by failing to credit her pain testimony despite concluding that her impairments were "severe" during step two of the five-step evaluation and by discrediting her testimony based upon her daily living activities.

### IV. Standard of Review

Judicial review of disability claims under the Act is limited to whether the Commissioner's decision is supported by substantial evidence or whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir.

2002). "Substantial evidence is less than a preponderance, but rather such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005); *see also Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir 1990) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)). The Commissioner's factual findings are conclusive when supported by substantial evidence. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). If supported by substantial evidence, the Commissioner's factual findings must be affirmed, even if the record preponderates against the Commissioner's findings. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004); s*ee also Martin,* 894 F.2d at 1529. Legal standards are reviewed *de novo*. *Moore v. Barnhart*, 405 F. 3d 1208, 1211 (11th Cir. 2005).

## V. Discussion

A.   **The ALJ's RFC Assessment Was Not Improperly Conducted.**

Plaintiff first argues that the RFC assessment was improperly performed because it "does not include any restrictions regarding detailed versus simple work or the ability to maintain attention or concentration" despite the ALJ's determination that "[Plaintiff's] depressive disorder results in moderate impairment of concentration, persistence and pace." (Pl.'s Mem. 1) (citing Tr. 12). This argument misses the mark for two reasons. First, the argument misunderstands the ALJ's conclusions. The ALJ was not addressing Plaintiff's RFC; nor does his statement suggest that her impairments are significant enough to warrant much weight in an RFC determination. In the section of the decision that Plaintiff cites, the ALJ was stating his step-three determination as to whether her impairment(s) meet or medically equal a listing. As the ALJ wrote:

> The medical evidence indicates that the claimant has continued to be treated for her impairments that are "severe" in combination within the meaning of the

6

> Regulations, but not "severe" enough to meet or medically equal, either singly or in combination, to one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. Specifically, the claimant's depression has not resulted in limitations consistent with either 12.04 or 12.06, with no evidence of more than moderate restriction of activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, or pace, and no evidence of episodes of decompensation of extended duration.

(Tr. 12). The ALJ, therefore, was not failing to follow through with findings concerning his RFC determination. Rather, his mention of Plaintiff's difficulties with concentration was part of a separate consideration that precedes the RFC determination.

Secondly, even if the ALJ were writing about Plaintiff's RFC, as a matter of law the ALJ is not obligated to enumerate every single alleged limitation. In this jurisdiction, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection which is not enough to enable [the district court or this Court] to conclude that [the ALJ] considered her medical condition as a whole." *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (internal citations omitted). A review of the ALJ's RFC determination suggests to the court that the ALJ did consider Plaintiff's medical condition as a whole. The ALJ indicated considering Plaintiff's functional limitations as stated in her Physical Activities Questionnaire. (Tr. 13). He took into consideration Plaintiff's obesity, her history of depression, back pain, allegations that her legs would give out, and medical consultations with Dr. Gulati, Dr. Scott, and Dr. Walker. (Tr. 14-15). The ALJ's consideration of the evidence was not an arbitrary and broad dismissal of evidence. Therefore, the court cannot conclude that the ALJ's RFC assessment was improperly conducted for the reasons alleged by Plaintiff.

**B.     Plaintiff's Claim That the ALJ Lacked Access to Medical Records That Were Available to the SSA is Unsupported by Evidence.**

Plaintiff next asserts that the ALJ "neglect[ed] to mention [Plaintiff's] history of psychiatric hospitalization for suicide attempts in July 1998 at Huntsville Hospital and June 2005 at Crestwood Medical Center." (Pl.'s Mem. 1). According to Plaintiff, those records "were available at the time of the initial claim denial, but were apparently removed prior to the ALJ hearing." (Pl.'s Mem. 1-2). Therefore, concludes Plaintiff, "the initial claim adjudicator had access to different medical evidence than the ALJ."

There are several problems with this assertion. For starters, Plaintiff has not presented any argument; that is, Plaintiff has not explained how these allegations, if true, would establish error by the ALJ. Plaintiff has failed to cite any legal standard that has been violated or provide any evidence that these medical records are missing. Indeed, the record includes medical evidence from Crestwood Medical Center from June 2005 and medical evidence from Huntsville Hospital from April 2005 and November 2006. (Tr. 163-64, 210-21). And while there is no evidence that exists in the record related to a hospitalization for a suicide attempt in July 1998, the ALJ is not obligated to collect medical evidence from beyond twelve months before the date the disability allegedly began, and in any event, the burden of producing such evidence falls squarely on Plaintiff's shoulders. *See Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003); *McCloud v. Barnhart*, 166 Fed. Appx. 410, 418 (11th Cir. 2006). If Plaintiff believed at the time of the hearing that the evidence was incomplete or inaccurate, she had the opportunity to express that concern when the ALJ specifically asked if there were any objections to any of the exhibits on record but she did not do so. (Tr. 26). Since Plaintiff did not raise this issue before the ALJ hearing, it would be unfair to consider it here. *See Wheeler v. Heckler*, 784 F.2d 1073, 1077

8

(11th Cir. 1986); *Pierre v. United States*, 525 F.2d 933, 936 (5th Cir. 1976).  But again, even more fundamentally, Plaintiff has failed to develop a cognizable legal argument; therefore, the court does not need to consider this issue.  *See Rowe v. Schreiber*, 139 F.3d 1381, 1382 n.1 (11th Cir. 1998) (absent developed argument, mere mention of an issue will not be considered); *N.L.R.B. v. McClain of Georgia, Inc*, 138 F.3d 1418, 1422 (11th Cir. 1998) ("[i]ssues raised in a perfunctory manner, without supporting arguments and citations to authorities, are generally deemed to be waived.").

### C.    The ALJ Did Not Err in His Decision to Discount Dr. Scott's Opinion.

Plaintiff contends that, because the ALJ "rejected Dr. Scott's opinion on the basis that it is not supported by treatment records," the ALJ "gave greater weight to the opinions of the psychological consultative evaluator and state agency consultant" than to Plaintiff's treating physician.  (Pl.'s Mem. 2).  This argument fails for two reasons: (1) the mental RFC determination is the responsibility of the ALJ, not Dr. Scott; and (2) the ALJ can discount expert testimony so long as he provides clear and adequate reasons for doing so.

It is emphatically the duty of the ALJ, not a medical expert, to make the RFC determination.  The court has long recognized that the "determination of residual functional capacity is within the authority of the ALJ."  *Beech v. Apfel*, 100 F.Supp.2d 1323, 1330 (S.D. Ala. 2000) (citing 20 C.F.R. § 404.1546); *Lewis v. Callahan*, 125 F.3d at 1440.  This is necessarily a duty of the ALJ, particularly because the determination of RFC requires considering not only medical evidence, but "all of the relevant evidence of a claimant's remaining ability to do work despite h[is] impairments."  *Beech v. Apfel*, 100 F.Supp.2d at 1330.  Therefore, the ALJ is not required to unquestioningly adopt the conclusions of a medical expert.

To require that would impose "an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled." SSR 96-5p.  The task before the court, then, is not to reevaluate the evidence to determine whether the ALJ should have assigned more or less weigh to particular testimony, but rather to examine the ALJ's reasons for assigning credibility and whether or not those reasons are supported by substantial evidence.  *See Dyer*, 395 F.3d at 1210.

Plaintiff argues that "the primary treating physician rule should be enforced" and cites *Lewis v. Callahan* for the proposition that "the testimony of a treating physician must be given substantial or considerable weight unless 'good cause' is shown to the contrary," and that "[t]he ALJ must . . . articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error." (Pl.'s Mem. 2) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)).  Plaintiff, however, does not explain how the ALJ failed to articulate his reasons for giving less weight to the opinion of Dr. Scott.  (Pl.'s Mem. 2-3). Indeed, contrary to Plaintiff's assertions, a review of the ALJ's decision reveals that he did articulate his reasons for discounting Dr. Scott's opinion.  The ALJ wrote that Dr. Scott's "opinion is given little weight as it is inconsistent with the GAF score of 60 she reported on the same assessment." (Tr. 15).  The ALJ further noted that the ALJ did not treat Plaintiff until February 6, 2007 and that Dr. Scott's "opinion that [Plaintiff] would be unable to hold down stable employment is not supported by her treatment records." (*Id.*).  As the ALJ noted, Dr. Scott's opinion "is not even supported by [Plaintiff's] appearance and testimony at the hearing" in which she testified that she had inquired about working for her prior employer, goes out to eat with her boyfriend, and attends yard sales. (*Id.*).

In citing *Lewis*, Plaintiff also neglected to mention or refer to the sentences immediately following the ones she quoted. After announcing the well-recognized rule in this jurisdiction that the ALJ must clearly articulate good cause for giving less weight to the opinion of a treating physician, the court in *Lewis* then gave examples of cases where it had previously found good cause. *Lewis*, 125 F.3d at 1440. Examples included cases "where the doctor's opinion was not bolstered by evidence, or where the evidence supported a contrary finding," or "where the doctors' opinions were conclusory or inconsistent with their own medical records." *Id*. Based upon such precedent, the reasons articulated by the ALJ constitute good cause, and therefore, the ALJ's decision to discount Dr. Scott's testimony is supported by substantial evidence.

**D.    The ALJ's Application of the Pain Standard is Supported by Substantial Evidence.**

Plaintiff "feels she meets the Pain Standard." (Pl.'s Mem. 3). Plaintiff submits two arguments to support this claim: (1) Plaintiff satisfied the second prong of the pain standard when the ALJ found severe impairments under the third step of his five-step evaluation, and (2) the ALJ erred when he discredited Plaintiff's pain testimony based upon her daily living activities.

The proper standard to be applied in this Circuit when evaluating complaints of disabling pain was articulated in *Hand v. Heckler*, 761 F.2d 1545 (11th Cir. 1985), which held that in determining whether the claimant suffers from disabling pain,

> [t]here must be evidence of an underlying medical condition and (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from that condition or (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.

*Hand v. Heckler*, 761 F.2d at 1548 (quoting S.Rep. No. 466 at 24); *see also Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986).

If a claimant testifies as to her subjective complaints of disabling pain and the ALJ decides not to credit such testimony, the ALJ "must clearly articulate explicit and adequate reasons for discrediting the claimant's allegations." *Dyer v Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005); *see also Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991), *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995). Failure to articulate the reasons for discrediting subjective pain testimony requires, as a matter of law, that the testimony be accepted as true. *Holt*, 921 F.2d at 1223; *Cannon v. Bowen*, 858. F.2d 1541, 1545 (11th Cir. 1988).

Plaintiff claims that she satisfied both prongs of the pain standard when the ALJ determined that "[t]he claimant has the following severe impairments: degenerative disc disease with a history of a cervical fusion, depressive disorder, hypertension and obesity." (Pl.'s Mem. 3, 4).[1] In citing this determination, however, Plaintiff is actually quoting the ALJ's step-two findings, not his pain standard analysis. This is a distinction with a difference. The ALJ's analysis at "[s]tep two is a threshold inquiry" that "allows only claims based on the most trivial impairments to be rejected." *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986). At this stage of the evaluation, an impairment is not found to be "severe" only "if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Id.* Therefore, the standard for measuring "severity" is different at the step-two determination than the standard for measuring whether a claimant's limitations are severe in an RFC assessment, or the standard for measuring whether a claimant's pain is severe enough to be disabling under the pain

---

[1] Plaintiff quotes the ALJ in her brief on pages three and four without citing the record; but, with the exception of a dropped "a," the ALJ's step-two determination (Tr. 12) is the only part of his decision that matches the quote "cited" by Plaintiff.

standard. These are different standards designed to address separate issues and they should not be conflated.

What the ALJ actually concluded when evaluating Plaintiff's pain testimony was that "the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (Tr. 13). Since the ALJ discredited Plaintiff's pain testimony, the court's task here is to evaluate the ALJ's stated reasons for his decision to see if they are supported by substantial evidence. *Dyer*, 395 F.3d at 1210. A review of the record convinces the court that they are. The ALJ had found that Plaintiff failed to (1) provide evidence establishing how her obesity or depression affected her or (2) produce any objective evidence establishing continual problems with her wrists, which Plaintiff's attorney admitted at the hearing. (Tr. 14, 37). As the ALJ has noted, Plaintiff has sought employment. (Tr. 15, 39). Admirable though this may be, the fact that Plaintiff has presented herself as capable of performing work to potential employers yet submits to the court that she is unable to engage in substantial, gainful activity creates an inconsistency that undermines her credibility. The contrast between Plaintiff's claims to the court, such as those indicating pain from standing, walking, and sitting (Tr. 83), or her testimony that moving her head causes stabbing pains (Tr. 36), and her attempts to seek employment leads the court to find that the ALJ's credibility determination is supported by substantial evidence.

Plaintiff finally contends that the ALJ erred when he discredited her pain testimony based upon her daily living activities. (Pl.'s Mem. 3-4). To be sure, in the Eleventh Circuit, it is

13

recognized that participation in everyday activities of short duration does not necessarily disqualify a claimant from disability. *See Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997) ("Nor do we believe that participation in everyday activities of short duration, such as housework or fishing, disqualifies a claimant from disability. . ."). The court declines to consider whether shopping for Princess Diana dolls can be considered an everyday activity of short duration, because that is not the controlling question here. The ALJ followed the correct legal standards and his findings are supported by substantial evidence. Therefore, his decision is due to be affirmed.

## VI. Conclusion

The court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and proper legal standards were applied in reaching this determination. The Commissioner's final decision is, therefore, due to be affirmed, and a separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this      17th      day of November, 2010.

　　　　　　　　　　　　　　　　　　　　　　　　　　　　　
　　　　　　　　　　　　　　　**R. DAVID PROCTOR**
　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE